Eloise HONOR *v.* Terry YAMUCHI, Director of the
Arkansas Department of Human Services, in his Official
Capacity Only, and as the Division of Aging and Adult
Services

91-40                                           820 S.W.2d 267

Supreme Court of Arkansas
Opinion delivered November 25, 1991

*David J. Manley*, for appellant.

*C. Norton Bray*, for appellant.

STEELE HAYS, Justice. On August 6, 1990, the Department of Human Services (DHS) filed a petition in the Probate Court of White County pursuant to Ark. Code Ann. § 5-28-101 (1987) for temporary and long-term protective custody of Eloise Honor, an alleged endangered adult suffering from mental and physical ailments which rendered her unable to care for herself. By *ex parte* order the probate court found probable cause for protective custody, ordered temporary custody and scheduled a hearing on long-term custody for August 20. Ms. Honor was given notice of

the hearing and of her right to be present, to effective assistance of counsel, to cross-examine witnesses, and to present evidence in her own behalf.

At the hearing for long-term protective custody Ms. Honor was present but was not represented by counsel. The probate judge found that she lacked the capacity to care for herself, authorized DHS to place her in an appropriate facility, appointed Mr. David Manley as attorney *ad litem* and ordered judicial review within three months.

Mr. Manley promptly filed a petition in the White County Chancery Court seeking injunction and declaratory relief to return Ms. Honor to her home based on a denial of due process. DHS moved to dismiss on grounds of sovereign immunity, that neither Ark. Code Ann. § 5-28-301 (1987) nor the due process clause of the Fourteenth Amendment required the appointment of counsel and that Ms. Honor had expressly waived counsel.

That matter was heard on November 1 and the chancellor found that Ms. Honor had waived counsel at the August 20 hearing in probate court. Ms. Honor's petition was denied, as was the motion of DHS, however, the chancellor ruled that Ms. Honor revoked her waiver of counsel and ordered her release and the termination of protective custody.

Ms. Honor brings the matter to this court on four points of appeal: 1. The chancellor erred in holding that § 5-28-101 does not require the appointment of counsel for her; 2. The Chancellor erred in holding that neither art. II, sections 2, 8 and 21 of the Arkansas Constitution nor the due process clause of the Fourteenth Amendment require that Ms. Honor be represented by counsel; 3. The chancellor erred in finding that Ms. Honor waived her right to counsel at the hearing, and 4. The chancellor erred in finding that Ms. Honor was not a prevailing party for purposes of an attorney's fee pursuant to 42 U.S.C. § 1988 (1981 & Supp. 1991). By cross appeal DHS argues that the chancellor erred in not granting its motion to dismiss.

Addressing the appellant's points first, we agree that the chancellor erred in holding her right to due process was not violated by the failure to require that she either be represented by counsel, or make an intelligent waiver of that right. Appellant

argues that an attorney is required implicitly by the language of the Adult Abuse Act, §§ 55-28-301—305 (1987), and by the Arkansas and United States Constitutions. We will deal with the constitutional requirement first.

■ DHS does not dispute Ms. Honor's right to an attorney at the long-term care hearing if she so desired. Ms. Honor argues, however, that not only does she have a right to an attorney in theory, but if that right is to be meaningful, more is required of the trial court in the implementation of that right than occurred here. She argues that in connection with a proceeding for long-term care of an abused adult the court must determine whether the individual has the desire and ability to retain counsel, and if indigent, to see that an attorney is appointed, and if no attorney is retained or appointed, the court must be satisfied the subject has knowingly and intelligently waived the right to an attorney. These factors correspond to criminal cases where defendants face the possibility of incarceration. *See* Ark. R. Crim. P. 8.2 and 8.3. We believe they are equally applicable here, there being no material distinction between procedures aimed at the curtailment of physical liberty whether criminal or civil.

The point is well stated in *Project Release v. Prevost*, 722 F.2d (2nd Cir. 1983), in its discussion of civil commitment to a mental institution:

> Involuntary civil commitment to a mental institution has been recognized as "a massive curtailment of liberty," *Vitek v. Jones*, 445 U.S. 480, 491-92, 100 S.Ct. 1254, 1262-63 63 L.Ed.2d 552 (1980); *Humphrey v. Cady*, 405 U.S. 504, 509, 92 S.Ct. 1048, 1052, 31 L.Ed.2d 394 (1972), which, because it may entail indefinite confinement, could be a more intrusive exercise of state power than incarceration following a criminal conviction. *See Colyar v. Third Judicial District Court*, 469 F. Supp. 424, 429 (D. Utah 1979) (citing *Humphrey v. Cady*, 405 U.S. at 509, 92 S.Ct. at 1052). Civil commitment for any purpose requires due process protection. *See Vitek*, 445 U.S. at 491-92, 100 S.Ct. at 1262-63; *Addington v. Texas*, 441 U.S. 418, 425, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979); *O'Connor v. Donaldson*, 422 U.S. 563, 580, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975) (Burger, C.J., concur-

ring). Indeed, "[t]here can be no doubt that involuntary commitment to a mental hospital, like involuntary confinement of an individual for any reason, is a deprivation of liberty which the State cannot accomplish without due process of law." *O'Connor*, 422 U.S. at 580, 95 S.Ct. at 2496 (Burger, C.J., concurring). Whether the state purports to act pursuant to a parens patriae interest in promoting the welfare of the mentally ill, *see Rogers* v. *Okin*, 634 F.2d 650, 657-59 (1st Cir. 1980), vacated and remanded sub nom. *Mills* v. *Rogers*, 457 U.S. 291, 102 S.Ct. 2442, 2447, 73 L.Ed.2d 16 (1982), or pursuant to its police power interest in preventing violence and maintaining order, 634 F.2d at 654-57; 102 S.Ct. at 2447; the state, in so acting may not curtail or deny Fourteenth Amendment substantive or procedural due process protections in exercising such powers. *See O'Connor*, 442 U.S. at 580, 95 S.Ct. at 2496; *Specht* v. *Patterson*, 386 U.S. 605, 608, 87 S.Ct. 1209, 1211, 18 L.Ed.2d 326 (1967). Diminished capacity alone cannot serve to undermine protections afforded the individual's liberty interest in this area.

*Project Release* at 926.

The court continued:

Recent cases indicate that a right to counsel exists where an individual's physical liberty is threatened by the state's action. *See Lassiter* v. *Department of Social Services*, 452 U.S. 18, 25-27, 101 S.Ct. 2153, 2158-2159, 68 L.Ed.2d 640 (1981); *see also Gagnon* v. *Scarpelli*, 411 U.S. 778, 790, 93 S.Ct. 1756, 1763, 36 L.Ed.2d 656 (1973) (probation revocation hearings); *In re Gault*, 387 U.S. 1, 36-37, 87 S.Ct. 1428, 1448, 18 L.Ed.2d 527 (1967) (juvenile delinquency proceedings) cf. *Vitek*, 445, U.S. at 495-97, 100 S.Ct. at 1264-66 (prisoner challenging attempted transfer to mental institution). Some courts have explicitly recognized a right to counsel in civil commitment proceedings. *See*, e.g., *Heryford* v. *Parker*, 396 F.2d 393, 396 (10th Cir. 1968); *Dixon* v. *Attorney General*, 325 F.Supp. 966, 974 (M.D. Pa. 1971); *In re Hop*, 29 Cal. Rptr. 721, 728 (1981); *In re Fisher*, 39 Ohio St.2d 71, 72, 313 N.E.2d 851, 858 (1974); cf. *Thornton* v. *Corcoran*, 132 U.S. App.

D.C. 232, 407 F.2d 695, 701 (1969) (matter considered in context of mental examination requested when accused raises insanity issue; counsel not required at psychiatric staff conference); *United States* v. *Albright*, 388 F.2d 719, 726 (4th Cir. 1968) (when mental examination requested by prosecution, counsel not required by psychiatric interview).

A right to counsel in civil commitment proceedings may be gleaned from the Supreme Court's recognition that commitment involves a substantial curtailment of liberty and thus requires due process protection. *Addington*, 441 U.S. at 425-27, 99 S.Ct. at 1808-10.

*Project Release* at 976.

However, not only must the right to an attorney be recognized in civil proceedings where physical liberty is in jeopardy, it is necessary that the right be recognized in a meaningful way so that constitutional safeguards are *in fact* implemented. This is discussed in *Heryford* v. *Parker*, 396 F.2d 393 (10th Cir. 1968):

Where, as in both proceedings for juveniles and mentally deficient persons, *the state* undertakes to act in parens patriae, it *has the inescapable duty to vouchsafe due process*, and this necessarily *includes the duty to see that a subject of an involuntary commitment proceeding is afforded the opportunity to the guiding hand of legal counsel at every step of the proceedings, unless effectively waived by one authorized to act in his behalf.*

. . . *Nor is it sufficient that the Wyoming statute permissively provides* that the proposed *patient "may be represented by counsel."* Fourteenth Amendment *due process requires that the infirm person*, or one acting in his behalf, *be fully advised of his rights and accorded each of them unless knowingly and understandingly waived.* [Our emphasis.]

To the same effect see *In re Fisher*, 313 N.E.2d 851, 39 Ohio St.2d 71 (1974).

The safeguards for right to counsel in criminal cases were outlined recently in *Kincade* v. *State*, 303 Ark. 331, 796 S.W.2d

580 (1990):

> The Sixth and Fourteenth Amendments to the Constitution of the United States guarantee that any person brought to trial in any state or federal court must be afforded the fundamental right to assistance of counsel before he can be validly convicted and punished by imprisonment. Before an accused manages his own defense he must knowingly and intelligently waive the right to counsel. Every reasonable presumption must be indulged against the waiver of fundamental constitutional rights. The burden is on the government to clearly demonstrate a waiver of counsel. A trial court must inquire of an accused's ability to retain counsel, and if the accused is an indigent, counsel must be appointed for him. [Citations omitted.]

■ Nothing in this record reflects that these rights were effected. While Ms. Honor was given a notice of the hearing required by § 5-28-304 of the Adult Abuse Act, which included the statement that she had the right to "effective assistance of counsel," nothing else was done with regard to that right. When Ms. Honor attended the hearing she was not notified of her right at that time, nor was any inquiry made as to whether counsel had been retained, was desired, or whether Ms. Honor could afford an attorney. On the strength of what is before us we cannot conclude that an informed waiver occurred at this hearing, nor was Ms. Honor even asked if she chose to waive her right to counsel. The most that could be said of the proceedings is that she showed a passive acquiescence in general, but there is simply no affirmative showing of a waiver of counsel.

■ Nor can we agree with the chancellor's finding of a waiver of counsel where he also found long-term protective custody to be appropriate, which requires a finding by the trial court that:

> 1)   the person is lacking the capacity to comprehend the nature and consequence of remaining in a situation that presents an imminent danger to his health or safety;

> 2)   the individual is unable to provide for his own protection from abuse or neglect; and

3) the court finds clear and convincing evidence that the individual to be placed is in need of placement as provided in this chapter.

*See* § 5-28-305. To determine that long-term custody is appropriate because the individual lacks the capacity to comprehend impending dangers, finding at the same time there has been a knowing and intelligent waiver, is patently inconsistent. Accordingly, we agree that the trial court erred in holding that appellant's right to counsel was not violated.

As to the contention of Ms. Honor that the Adult Abuse Act itself requires the safeguards we have just discussed, there is no need to address the issue, in view of our holding they are required on constitutional grounds.[1]

As the appellant is now determined to be the prevailing party in this case, the chancellor should determine the award of attorneys' fees pursuant to 42 U.S.C. § 1988.

## CROSS APPEAL

On cross appeal, DHS argues the trial court erred in failing to dismiss the § 1983 action against both the Department of Human Services, and its director, Terry Yamauchi, in his official capacity. Citing to *Will* v. *Michigan Department of State Police*, 491 U.S. 58 (1989), appellees argue that both the state agency and the director are immune from suit.

We agree that neither the state nor a state agency can be sued under § 1983, *see Will* v. *Michigan, supra*, and the case against the department should have been dismissed on that basis. However, this is only a matter of form in this case as the director of the agency can be sued in his official capacity where, as here, only injunctive relief is sought.

Of course a state official in his or her official capacity when sued for injunctive relief, would be a person under § 1983

---

[1] We note that there was no request by appellant to declare the Adult Abuse Act unconstitutional in this case. Rather, her argument is only that although not expressly required by the act, these requirements are implicity recognized. *See* 16 Am. Jur. 2d, *Constitutional Law* § 225 (1979); and to the same effect *see Hardware Mutual Casualty Company v. Maxey*, 212 Ark. 161, 205 Ark. 29 (1947).

because 'official capacity actions for prospective relief are not treated as actions against the state.' [Citations omitted.]

*Will* v. *Michigan*, at 2311, n.10.

■ Appellees also argue the trial court failed to dismiss the case on the ground of an adequate remedy at law under Ark. R. Crim P. 60(b) or under a writ of habeas corpus. The appellees however failed to make a motion to transfer which was the proper remedy for this objection. *See Horne Brothers, Inc.* v. *Ray Lewis Corp.*, 292 Ark. 477, 731 S.W.2d 190 (1987); *Stolz* v. *Franklin*, 258 Ark. 999, 531 S.W.2d 1 (1976).

■ Furthermore, appellant's request for relief included future injunctive relief as well as immediate relief, relief not available under the remedies at law.[2] Appellant requested that an injunction issue against the director to prohibit the identical action against her unless constitutional safeguards were in place. Regardless of whether the appellant is entitled to bring an action of law, the mere existence of that right does not deprive the equity court of jurisdiction unless the legal remedy is clear, adequate and *complete. Spears* v. *Rich*, 241 Ark. 15, 405 S.W.2d 929 (1966).

Reversed on direct appeal, affirmed on cross appeal.

---

[2] Appellant's original complaint requested injunctive relief for appellant's release but no request for future injunctive relief. However at the hearing on the motion to dismiss, appellant's attorney in discussing this matter, in effect, made an amendment to the pleadings, with no objection from appellees at that time. Neither is there any objection on this point on appeal.