170 P.3d 683

**In re JESSE M.**

**No. 1 CA–MH 07–0002.**

Court of Appeals of Arizona, Division 1, Department E.

Nov. 8, 2007.

Terence C. Hance, Coconino County Attorney By Timothy G. McNeel, Deputy County Attorney, Flagstaff, Attorneys for Appellee.

H. Allen Gerhardt, Coconino County, Public Defender By Sandra L.J. Diehl, Deputy Public Defender, Flagstaff, Attorneys for Appellant.

---

1. We will affirm the court's findings of fact unless they are clearly erroneous or unsupported by substantial evidence. *In re MH 2006–000749,*

## OPINION

PORTLEY, Judge.

¶ 1 Jesse challenges the order involuntarily committing him for treatment based on the superior court's determination that he suffered from a serious mental disorder and needed in-patient treatment. Specifically, he contends the court erred when it refused to allow him to represent himself at the involuntary commitment hearing and when the court directed the court reporter to stop transcribing the proceedings.

## FACTUAL [1] AND PROCEDURAL BACKGROUND

¶ 2 Jesse was arrested on October 5, 2006, for allegedly threatening his parents and was psychiatrically evaluated in jail. The next day an application for involuntary evaluation was filed alleging that he had a mental disorder and was a danger to others. The superior court signed an order for custodial evaluation on October 11, 2006.

¶ 3 After the evaluation, a petition for court-ordered treatment was filed with the evaluations by two psychiatrists. The court set a hearing and appointed the public defender to represent Jesse. The notice of hearing advised Jesse the court would hold the hearing on October 24, 2006, to determine whether he should undergo treatment. The notice also outlined his rights which, in part, included the right to appear, to reply to the allegations, "to bring in witnesses, including an independent mental health evaluator (which the Court will appoint for qualified persons), and to be represented by an attorney."

¶ 4 The hearing was rescheduled after Jesse requested an independent evaluator. At the start of the hearing, Jesse requested a continuance to consult with private counsel or, alternatively, to represent himself. The continuance was granted over the State's objection.

¶ 5 One week later, Jesse, at the start of the hearing, asked to represent himself, and,

214 Ariz. 318, 321, ¶ 13, 152 P.3d 1201, 1204 (App.2007).

when that was denied, requested a continuance. Specifically, he told the court that because he had been unable to contact a lawyer after the prior continuance he wanted to represent himself. He noted that "I was told at the beginning that I was able to represent myself. And I can't find out why ... that has been changed." The court advised Jesse that his attorney was "an experienced attorney [who] knows what she's doing. You need her help." The court also stated "you're not capable of [representing yourself]. You're not experienced. You don't know what you're doing."

¶ 6 Just before the first witness was called, Jesse continued to object that the hearing was going forward by saying, "[t]his is totally unfair. This is a set up. This is crooked." The court then directed the court reporter "not to take down any additional comments made by [Jesse]. He's allowed to testify and he'll be given that opportunity."

¶ 7 The hearing proceeded, and Jesse, through counsel, cross-examined the State's five witnesses. Jesse made a statement to the court, and published family photographs and his writings. The court then found that Jesse suffered from schizoaffective disorder, a mental disorder, that he was persistently and acutely disabled and that he needed treatment. Jesse was involuntarily committed for inpatient and outpatient treatment. He filed an appeal, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12–2101 (2003) and 36–546.01 (2003).

## DISCUSSION

¶ 8 The issue is whether Jesse can waive his right to counsel and represent himself. We review this question of law de novo because it involves the interpretation and application of a statute. *MH 2006–000749*, 214 Ariz. at 321, ¶ 13, 152 P.3d at 1204.

¶ 9 An involuntary commitment hearing is a civil proceeding that can result in "a serious deprivation of liberty." *In re MH 2006–000023*, 214 Ariz. 246, 248, ¶ 10, 150 P.3d 1267, 1269 (App.2007) (quoting *In re Coconino County No. MH 1425*, 181 Ariz. 290, 293, 889 P.2d 1088, 1091 (1995)). As a

result, the proposed patient must be afforded due process protection. *Id.* (citing *In re Maricopa County Cause No. MH–90–00566*, 173 Ariz. 177, 182, 840 P.2d 1042, 1047 (App. 1992)). "Due process, in other words, requires that [the patient] be present with counsel, have an opportunity to be heard, be confronted with witnesses against him, have the right to cross-examine, and to offer evidence of his own." *Specht v. Patterson*, 386 U.S. 605, 610, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967). *See generally* H.H. Henry, Annotation, *Right to Counsel in Insanity or Incompetency Adjudication Proceedings*, 87 A.L.R.2d 950 (1963).

¶ 10 Arizona's legislative scheme fulfills the due process requirements. Specifically, A.R.S. § 36–539(B) (2003) ensures that due process in involuntary commitment proceedings is met by requiring that the "patient and his attorney shall be present at all hearings and the patient's attorney may subpoena and cross-examine witnesses and present evidence." Arizona has long provided the right to counsel for a person facing an involuntary commitment. As early as 1928, state law provided that:

> The judge of the superior court, upon complaint under oath, setting forth that a person by reason of insanity is dangerous being at large, shall cause such person to be brought before him for hearing and examination, and in open court, inform him of the charge and of his rights to make a defense thereto, to secure witnesses and be represented by counsel. If no counsel appear for such person, the court shall appoint counsel to represent him.

Ariz. Rev.Code § 1769 (1928).

¶ 11 The current statutory scheme continues the requirement that a person facing an involuntary commitment hearing has a right to counsel. Section 36–528 provides that a person facing emergency detention for mental health treatment "shall be informed of his rights ... including the right to consult an attorney. He shall be advised that if he cannot employ an attorney, the court will appoint one for him." A.R.S. § 36–528(D) (2003). Moreover, the provision provides that if "a petition for evaluation is filed, the court will appoint the person an attorney to

consult with and, if he cannot employ his own counsel, to represent him." *Id.*

¶ 12 Section 36–536 provides that before a hearing for court-ordered treatment can occur, the patient must receive a copy of the petition, the supporting affidavits, "and the notice of the hearing," and the court shall advise the patient "of his right to consult counsel." A.R.S. § 36–536(A) (2003). "If the patient has not employed counsel, counsel shall be appointed by the court...." *Id.* Moreover, the legislature has declared that "[t]he notice provisions of this section cannot be waived." A.R.S. § 36–536(B); *see In re MH 2006–000023,* 214 Ariz. at 248, ¶ 9, 150 P.3d at 1269.

¶ 13 Section 36–537 outlines the minimum duties of counsel, which include interviewing the patient; reviewing the petition and various reports; interviewing the petitioner, supporting witnesses, and testifying physicians; and investigating alternatives to court-ordered treatment. A.R.S. § 36–537(B) (2003). Moreover, the attorney is required to explain to the patient his rights pending the court-ordered treatment, the procedures and standards for court-ordered treatment, the alternative of becoming a voluntary patient, as well as his right to seek counsel at his expense. A.R.S. § 36–537(B)(1).

¶ 14 Finally, as noted above, section 36–539 outlines the hearing procedure and the role of the patient's lawyer. It provides that the patient and his attorney "shall be present at all hearings" and the lawyer can present evidence and subpoena and cross-examine witnesses. A.R.S. § 36–539(B). Consequently, the Arizona statutory scheme clearly meets the requirements envisioned when the United States Supreme Court noted that "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas,* 441 U.S. 418, 425, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979); *MH–90–00566,* 173 Ariz. at 182, 840 P.2d at 1047.

¶ 15 The question then becomes whether a patient facing involuntary commitment can waive his right to counsel. This court provided analytical guidance in *MH 2006–000749.* There, the question was whether a patient could waive her statutory right to be present at the involuntary commitment hearing. *MH 2006–000749,* 214 Ariz. at 319, ¶ 1, 152 P.3d at 1202. The patient, after telling the transportation officer that she had to go to court, refused to go with him ninety minutes later because she "did not know him." *Id.* at 320, ¶ 6, 152 P.3d at 1203. The trial court found, after testimony from the transportation officer, that the patient had voluntarily waived her right to appear, and the hearing continued in her absence. *Id.* at ¶ 8. On appeal, we found that the "intended beneficiary of a statute generally may waive the statute's benefit." *Id.* at 322, ¶ 18, 152 P.3d at 1205. After noting that a "waiver is not effective unless it is given voluntarily and intentionally," *id.* at ¶ 20, we remanded the case for a determination "by the court that the patient ha[d] knowingly and intelligently waived her right to be present." *Id.* at 324, 325, ¶¶ 27, 30, 152 P.3d at 1207, 1208.

¶ 16 *MH 2006–000749* clearly stated that the intended beneficiary of a statute may waive its benefit. *Id.* at 322, ¶ 18, 152 P.3d at 1205. Such benefit may include the right to counsel. In *Daniel Y. v. Arizona Department of Economic Security,* a parental termination case, we stated that the "standard for waiver of counsel under the statute is not different than it is for any other constitutional right." 206 Ariz. 257, 260–61, ¶ 15, 77 P.3d 55, 58–59 (App.2003). "Prior to finding that a client has waived his right to counsel, Arizona law requires that he be advised of the dangers of self-representation, and the difficulties involved in defending oneself without formal legal training." *Id.* (internal quotation omitted).

¶ 17 Other jurisdictions that have addressed the issue have found that the right to counsel can be waived in involuntary commitment cases. *See Doremus v. Farrell,* 407 F.Supp. 509, 516 (D.Neb.1975) ("The right to counsel may only be waived by an intelligent, knowing and voluntary waiver."); *Honor v. Yamuchi,* 307 Ark. 324, 820 S.W.2d 267, 270–71 (1991) ("Before [a patient] manages his own defense he must knowingly and intelligently waive the right to counsel. Every reasonable presumption must be indulged against the waiver of fundamental constitu-

tional rights."); *In re Click,* 196 Ill.App.3d 413, 143 Ill.Dec. 559, 554 N.E.2d 494, 497 (1990) ("To grant [the statutory] request, the court must be satisfied that [the patient] has the capacity to make an informed waiver of his right to counsel."); *In re R.Z.,* 415 N.W.2d 486, 488 (N.D.1987) ("The right to counsel may be waived if the waiver is knowing, intelligent and voluntary."); *McDuffie v. Berzzarins,* 43 Ohio St.2d 23, 330 N.E.2d 667, 669 (1975) ("The touchstone of our examination is that a waiver of this sort must be knowingly and intelligently made."); *Lanett v. State,* 750 S.W.2d 302, 304 (Tex.App.1988) ("We hold ... that a [patient] in a mental health proceeding has the right to waive court-appointed counsel and represent himself ... contingent upon the court finding, on the record, that the waiver is voluntary, knowing, and intelligent.").

¶ 18 The fact that a patient has the right to waive his right to counsel does not, however, end the analysis. The issue becomes whether a person alleged to have a mental disease or disorder, who the State is attempting to force into treatment, can knowingly, intelligently, and voluntarily waive his right to counsel. *See United States v. Veltman,* 9 F.3d 718, 720 (8th Cir.1993) (asking "under what conditions [can] this right to counsel ... be waived"). Or, stated differently, "it appears inherently contradictory to find a [patient] severely mentally ill, yet able to knowingly and intelligently 'waive' his right to counsel." *In re R.Z.,* 415 N.W.2d at 488; *see also State v. Collman,* 9 Or.App. 476, 497 P.2d 1233, 1237 n. 4 (1972) ("When one thinks in terms of waiver, voluntariness and its related problems, the requirement of acting knowingly and intelligently to effect a valid waiver by those very terms would seem to make this impossible—at least if the person is therein adjudicated mentally ill and committed.") (citation and internal quotations omitted).

¶ 19 Although a civil commitment proceeding cannot "be equated to a criminal prosecution," *Addington,* 441 U.S. at 428, 99 S.Ct. 1804; *Martin v. Reinstein,* 195 Ariz. 293, 302, 307, ¶¶ 20, 39, 41, 987 P.2d 779, 788, 793 (App.1999), the standards in criminal cases have been examined to determine when waiv-

er can occur. *See Daniel Y.,* 206 Ariz. at 260–61, ¶¶ 14–15, 77 P.3d at 58–59; *Honor,* 820 S.W.2d at 270–71. For example, in *Veltman,* the public defender sought to withdraw from the civil commitment hearing because the defendant wanted to represent himself. 9 F.3d at 719. The defendant was allowed to represent himself with counsel sitting next to him. *Id.* After the defendant was committed, he appealed and argued that the federal magistrate erred by failing "to adequately inquire as to whether [the defendant] knowingly and intelligently waived his right to counsel." *Id.* at 720.

¶ 20 The Eighth Circuit started by analyzing the issue under Sixth Amendment standards and found that:

> To assure that a defendant has adequate knowledge about his decision to proceed *pro se* at a criminal trial, a district court should give the defendant a specific warning, on the record, of the dangers and disadvantages of self-representation. This warning should address the availability of an attorney and the defendant's relative familiarity with trial procedure. Absent such an inquiry, we must review the entire record to determine if the defendant had the required knowledge from other sources.

*Id.* (citations, internal quotations and footnote omitted).

¶ 21 The court in *Veltman* found that the magistrate did not make the required inquiry, but found that in a civil commitment proceeding "[t]he right to counsel varies depending on the context in which it is invoked, as do the requisites for waiver." *Id.* at 721. The court then stated that the "statutory right to counsel may be waived in a [civil commitment] proceeding under conditions less exacting than the Sixth Amendment requirements in a criminal trial." *Id.*

¶ 22 The court found that the defendant "waived counsel voluntarily and without coercion" because he told the court that " 'it's my desire to represent myself[;]' " that his lawyer was available to help him and she advised the court that her client " 'appears to understand the issues involved[;]' " that the lawyer consulted with the defendant during the hearing; that he had a year of college and

had been a commercial pilot which "suggest[ed] that [he] had the intellectual capacity required to understand the consequences of his decision[;]" and that "his performance at the hearing was not so inadequate as to demonstrate his inability to knowingly waive counsel" even though he did not cross-examine or call any witnesses. *Id.* at 721–22. The court noted "[e]ven where the defendant may conduct his own defense ultimately to his own detriment, his choice must be honored [because] the competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right,* not the competence to represent himself." *Id.* at 722 (citations and internal quotations omitted). Consequently, the court found that the waiver was valid even though the defendant was committed to a mental health facility. *Id.*

¶ 23 Our supreme court made a similar observation in *State v. Evans,* 125 Ariz. 401, 610 P.2d 35 (1980). There, the major issue was whether the defendant who was diagnosed paranoid schizophrenic but competent to stand trial could waive his right to counsel even after the "judge [had] warned [the defendant] of the dangers of proceeding without the benefit of counsel but [he] elected to represent himself." *Id.* at 402, 610 P.2d at 36. The court stated that the mental health diagnosis "does not mean that [the defendant was] unable to make competent choices." *Id.* at 403, 610 P.2d at 37. The court found that "one of the psychiatrists who examined [the defendant] stated that [the defendant] understood the nature of the proceedings against him and in fact at the time of his arrest understood his Miranda rights well enough to request consultation with counsel before making any statements." *Id.* In fact, the court stated that "[a]n understanding of the right to remain silent until counsel is obtained indicates comprehension of constitutional rights and the role of counsel." *Id.* The court then found that "a careful examination of the psychiatric reports and the testimony adduced at the hearing ... reveals that [the defendant] was competent to make the decision to waive counsel; ... there [was no] complaint by advisory counsel, of any deterioration in [the defendant's] mental condition from the time of his competency hearing to ... trial." *Id.*

¶ 24 Before concluding that the defendant had knowingly and intelligently waived his right to counsel, the *Evans* court noted that one of the examining psychiatrists indicated that defendant knew the function of a jury, was knowledgeable about plea bargaining, knew about his prior convictions and understood the nature of the rape charge. *Id.* "The totality of the record supports the conclusion that the waiver of counsel was knowledgeable, and [the defendant] was competent when he made the waiver." *Id.* at 404, 610 P.2d at 38. Consequently, *Veltman* and *Evans* stand for the proposition that a person with a mental health diagnosis can waive his right to counsel so long as he is competent to make the decision and the record supports the trial court's decision.

¶ 25 Other jurisdictions that have addressed the issue have examined the indicia of voluntariness. For example, the appellate court of Illinois considered whether the trial court had inquired into the patient's competency to waive counsel in *In re Lawrence S.,* 319 Ill.App.3d 476, 254 Ill.Dec. 12, 746 N.E.2d 769, 771 (2001). After the patient told the court that he wanted to defend himself, the trial court excused his appointed lawyer. *Id.* Although the court did not immediately inquire into the patient's capacity to waive his right to counsel, the appellate court found that the court's initial discussion before the patient testified satisfied the inquiry, namely, that the patient identified himself, his date of birth, knew the nature of the proceedings and that the department of corrections wanted him admitted into a mental institution. *Id.* 254 Ill.Dec. 12, 746 N.E.2d at 774. As a result, the court stated that "[a]lthough this inquiry was not specifically tailored to glean whether [the patient] understood the exact ramifications of waiving his right to counsel, ... it demonstrated that [the patient] had the capacity required to waive a legal right." *Id.*

¶ 26 The North Dakota Supreme Court found that the "trial court must determine the competence of the [patient] to make a knowing and intelligent waiver of the right to counsel before permitting the [patient] to

proceed pro se," and, "[a]bsent evidence of a knowing, intelligent and voluntary waiver of counsel, a [patient] in an involuntary commitment proceeding may not represent himself." *In re R.Z.*, 415 N.W.2d at 488. The appellate court found the court erred in letting the patient represent herself without an examination on the record that the waiver was voluntary and knowing. *Id.* at 488–89.

¶ 27 In *McDuffie*, the Ohio Supreme Court indicated that a waiver could occur if "[a] judge can make certain that [a patient's] professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances." 330 N.E.2d at 669. The court, after finding that the waiver was not on the record, rejected the claim that the patient had waived counsel. *Id.* at 669–70.

¶ 28 The Texas Court of Appeals in *Lanett* recognized that "the issue of a 'knowing waiver' in[ ] the mental health context creates an even more difficult dilemma." 750 S.W.2d at 305. The court noted that it "is imperative that the … patient fully understands his or her waiver. It is also incumbent upon the judge to fully determine the … patient's capabilities to make a knowing waiver." *Id.* And, "the court should not summarily deny it simply because of the nature of the proceedings." *Id.*

¶ 29 Recognizing that the patient had not been found to be mentally ill at the start of the proceeding, the court in that case examined the record and stated that "the court could have found that [the patient] was not capable of knowingly and intelligently waiving her right of court-appointed counsel." *Id.* Specifically, the court found that the trial court could have considered the information at the probable cause hearing, even though that evidence was not in the record; the patient's outbursts in the courtroom just before the start of the hearing; as well as the three psychiatric reports, each which found that the patient was mentally ill. *Id.* As a result, the court did not find that the trial court had committed reversible error in denying the request for waiver. *Id.*

■■ ¶ 30 Based on case law, when the superior court is faced with a patient who wants to waive his right to counsel at an involuntary commitment hearing, the court should: (a) advise the patient of his right to counsel; (b) advise the patient of the consequences of waiving counsel, namely, that the patient and not the lawyer will be responsible for presenting his case, cross-examining the petitioner's witnesses, calling witnesses, and presenting evidence as well as closing argument; (c) seek to discover why the patient wants to represent himself, which may involve a dialogue with counsel or others; (d) learn whether the patient has any education, skill or training that may be important to deciding whether he has the competence to make the decision; (e) determine whether the patient has some rudimentary understanding of the proceedings and procedures to show he understands the right he is waiving; and (f) consider whether there are any other facts relevant to resolving the issue. Once that on-the-record discussion has been completed, the trial court should make specific factual findings supporting the grant or denial of the waiver. *See MH 2006–000749*, 214 Ariz. at 324, ¶ 29, 152 P.3d at 1207.

■ ¶ 31 In this case, it is clear that the trial court did not explore appellant's request to waive counsel. After appellant's request on the first day of the hearing, the court merely stated, "[v]ery good. Do we have any opening remarks … from the State before we begin?" After counsel indicated that appellant wanted to represent himself, the court noted that the issue was raised "at the last hearing[ ][a]nd I wasn't too enamored with the idea of him representing himself, particularly since this is a Title 36." The court continued and stated that "[y]ou're not going to represent yourself. Ms. Diehl is an experienced attorney. She knows what she's doing. You need her help. And I'm not going to let you run my courtroom, period." Later, the court, in response to appellant's inquiry about why he could not represent himself, stated "[b]ecause you're not capable of doing that. You're not experienced. You don't know what you're doing."

¶ 32 Although there is nothing in that exchange that supports the trial court's conclusion that appellant could not knowingly and intelligently waive his right to counsel, we

examine the record to determine whether the court erred in denying appellant's request. *See Evans,* 125 Ariz. at 403–04, 610 P.2d at 37–38. The court had the verified petition for evaluation, the verified petition for court-ordered treatment and two accompanying affidavits.

¶ 33 The petition for evaluation noted that the appellant had been living on the street for ten to twelve months and had not been taking his medications. One affidavit accompanying the verified petition for court-ordered treatment noted that appellant had a history of schizoaffective disorder; that he had not been taking his medication for five months and did not plan to take medication; that he was "very agitated" when he was psychiatrically evaluated in jail as well as being "moderately disorganized in behavior and thoughts." The affidavit then outlined appellant's mental health history in 2005 and 2006, which stated that he had mild auditory hallucinations; that he admitted having frightening thoughts; that his mental illness began to be manifest when he was a sophomore in college, which resulted in his dropping out and returning home; that he received treatment for schizoaffective disorder; that he left home and moved to Flagstaff; that his mother noted that he "was noncompliant with his medications" and had become "very delusional and psychotic;" and that the examining psychiatrist noted "[h]is insight, judgment and impulse control are markedly impaired due to his delusional state." The other evaluation, which accompanied the petition, noted that appellant "is adamant that he has no mental illness;" that his insight and judgment are severely impaired; and that because of his mental illness he cannot "*make decisions in his own best interest.*"

¶ 34 Unlike the defendant in *Evans* who was found to be competent to make his decision to waive counsel, *see supra* ¶¶ 23–24, the three documents the court had in this case present serious concerns about appellant's capability to make a knowing waiver. Appellant did not have the education or experience to understand the proceeding, which became more evident after the first psychiatrist testified and appellant stated "[t]hat is entrapment right there." He was not taking his medications and was refusing to take medications because he did not believe he had a mental illness. He was hearing voices and responding to internal stimuli. He had impaired judgment and poor decision making skills. Furthermore, the psychiatrist reported that appellant was unable to make decisions in his best interest.

¶ 35 Moreover, although appellant's counsel reiterated appellant's desire to waive counsel, there was no indication in the record that she thought he was capable of making the choice to waive counsel or to represent himself. As a result, a review of the record belies appellant's ability to understand the nature of the proceedings and to represent himself. Consequently, although the trial court erred by failing to inquire whether appellant understood what his request to waive counsel meant, what he would be required to do and whether he was capable of making the request, the totality of the record supports the denial of request to waive his counsel.

¶ 36 Appellant next contends that the trial court committed fundamental error when the court reporter was directed to "not take down any additional comments" by appellant. Specifically, appellant contends that the trial court's direction caused him prejudice because "he is now unable to show ... that he preserved an issue ... for appeal."

¶ 37 Involuntary commitment proceedings are statutorily required to be recorded. The statute, A.R.S. § 36–539(E), states that "[a] verbatim record of all proceedings under this section shall be made by stenographic means by a court reporter if a written request ... is made by any party ... at least twenty-four hours in advance." Moreover, if a court reporter is not requested, the proceedings have to be recorded by "electronic means." A.R.S. § 36–539(E). Thus, the statutory language clearly manifests the legislature's intent that there will be a record of an involuntary commitment proceeding, whether by stenographic or other means.

¶ 38 Although a trial judge has discretion to control his or her courtroom and the trial proceedings, *Brown v. U.S. Fid. & Guar. Co.,* 194 Ariz. 85, 91, ¶ 33, 977 P.2d

**82**

807, 813 (App.1998), a judge does not have the discretion to disregard the statutory requirement for a verbatim record.[2] Thus, even though the judge may have been exasperated after hearing appellant characterize the court's ruling as "totally unfair," "a set up," and "crooked," the judge could have exercised other acceptable options rather than improperly directing the court reporter to stop recording appellant's statement. For example, the judge could have explained that he understood the point Jesse had made and the point need not be repeated, could have asked counsel to talk with her client or could have taken a brief recess. Consequently, the trial court erred by directing the court reporter to stop recording appellant's statements.

■ ¶ 39 We next turn to determine whether the error requires the order of commitment to be vacated, and conclude the error in this case is harmless. First, appellant did not object to the trial court's order at the proceeding or afterwards. Additionally, appellant did not seek a new trial for any resulting transcript omission. Nor has the appellant argued or provided an affidavit [3] that indicates that the court reporter omitted one or more statements that were pertinent to some portion of the proceeding other than the trial court's ruling. Instead, the transcript indicates that after the court ordered the court reporter not to record any additional comments from appellant, the State called its first witness. Accordingly, it appears from the transcript that the proceeding continued without further comments from appellant. Thus, we find no need to vacate the commitment order and remand the matter for a new trial.

## CONCLUSION

. ¶ 40 Based on the foregoing, we affirm the involuntary commitment for treatment.

2. We have, for example, reminded judges that criminal trial bench conferences out of the hearing of the jury should be recorded contemporaneously with the discussion and not later. *State v. Paxton*, 186 Ariz. 580, 588–89, 925 P.2d 721, 729–30 (App.1996). ("We ... express our own disapproval of this practice because it fails to make a complete record for appeal. [To do otherwise] more often leads to confusion and inefficiency, frequently defeating the goal of preserving for appellate review an accurate record

CONCURRING: JON W. THOMPSON, Presiding Judge and SUSAN A. EHRLICH, Judge.

of what actually transpired in the trial proceedings.").

3. Appellant could have, pursuant to Arizona Rules of Civil Appellate Procedure 11(c) or (e), attempted to file his affidavit, one from his trial counsel or one from the court reporter to demonstrate that one or more of his statements was omitted.