NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE: MH2019-003630

No. 1 CA-MH 19-0049

FILED 4-14-2020

Appeal from the Superior Court in Maricopa County
No. MH2019-003630
The Honorable Timothy A. Stratton, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Anne C. Longo, Tawn T. Kao
*Counsel for Appellee*

Maricopa County Legal Defender's Office, Phoenix
By Anne H. Phillips
*Counsel for Appellant*

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court,
in which Judge Maria Elena Cruz and Judge David B. Gass joined.

**W I N T H R O P**, Judge:

¶1        Appellant appeals a superior court order for involuntary mental health treatment. Appellant argues the order should be vacated because the court violated Appellant's due process rights by denying her request for a continuance that would allow her to either prepare to represent herself or obtain private counsel. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        On May 18, 2019, Phoenix Police responded to a call alleging Appellant forced entry into a monastery and then fled from workers. When an officer arrived at the monastery, Appellant ran toward him pushing a stroller with a child in it. Appellant asked the officer to take care of her children and then ran away. The officer chased after Appellant and grabbed her arm. Appellant began to struggle, and eventually both the officer and Appellant fell to the ground.

¶3        Soon after, a second officer arrived on the scene. The two officers handcuffed Appellant and tried to move her to the back of a police vehicle. Appellant continued to struggle, hooking her legs underneath the car and door to avoid going into the vehicle. While struggling, Appellant was yelling about God, Jesus, and demons.[1]

¶4        Eventually, the officers were able to secure Appellant in the back of the police car. Once inside the vehicle, Appellant became calm and stared off into space for extended periods of time. The officers tried to ask Appellant some questions but she mostly remained silent. Shortly thereafter, the officers found Appellant's second, older child standing nearby. Appellant was examined for any injuries, and then an officer drove her to a mental health crisis center, where Appellant voluntarily walked in.

¶5        The officer filed a petition for a court-ordered mental health evaluation pursuant to Arizona Revised Statutes ("A.R.S.") section 36-523, alleging Appellant was a danger to self and to others based on a mental disorder and was unwilling to undergo voluntary treatment. The court signed a detention order for notice and evaluation and scheduled a hearing for June 3, 2019, to determine whether court-ordered mental health

---

[1]        Appellant testified that she did not yell or say anything about demons but stated she had been saying prayers aloud.

treatment was appropriate. The court also ordered a public advocate be appointed for Appellant.

¶6 At the start of the hearing regarding potential court-ordered treatment, Appellant addressed the court in lieu of her attorney, who was present. Appellant advised that she was not refusing court-ordered treatment, but requested the hearing be continued for one week so she could retain a private attorney or, alternatively, prepare to represent herself. In response, the court told Appellant that if she were to represent herself, she would be responsible for presenting her own case, calling and cross-examining any witnesses, and making her own closing argument. The court questioned Appellant on her understanding of the proceedings and whether she had been taking her medications. The court also inquired about the identity of Appellant's private attorney, to which Appellant replied that her mother was working on obtaining one but provided no further information about the status of such effort or whether she had the financial resources for such retention. Appellant also told the court she would agree to remain voluntarily committed during the period of any continuance, if one were granted. After taking some time to review Appellant's file, including the affidavits of the mental health experts who evaluated Appellant and the 72-hour medication affidavit, all of which had already been stipulated into evidence, the court denied the motion to continue and proceeded with the hearing.

¶7 The State called as witnesses both of the officers who had secured Appellant at the monastery. Both officers testified that Appellant did not make any self-harm statements or statements threatening anyone else while she was being restrained. In addition, the officers testified that they did not witness any self-harm behaviors or aggression toward anyone else, aside from Appellant's combative behavior in resisting arrest. Appellant also testified on her own behalf about the incident.

¶8 At the conclusion of the hearing, the court dismissed the counts of danger to self and danger to others based on insufficient evidence but, on the basis of the expert opinion affidavits, found Appellant persistently and acutely disabled because of a mental disorder. The court ordered Appellant undergo treatment in a combined inpatient/outpatient treatment program.

¶9 Appellant filed a timely notice of appeal from the treatment order. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and 36-546.01.

**ANALYSIS**

**¶10**     Appellant argues the court violated her due process rights when it denied her motion to continue the hearing so she could hire private counsel to represent her in her mental health proceedings. Appellant also argues the court violated her due process rights by denying her the right to represent herself at the hearing and by conducting an incomplete inquiry under *In re Jesse M.*, 217 Ariz. 74, 80, ¶ 30 (App. 2007). We review a trial court's denial of a motion to continue for an abuse of discretion. *In re MH2003-000240*, 206 Ariz. 367, 369, ¶ 10 (App. 2003). Whether a patient can waive her right to counsel and represent herself in an involuntary commitment proceeding is a question of law that we review *de novo* because it involves the interpretation and application of a statute. *Jesse M.*, 217 Ariz. at 76, ¶ 8.

**¶11**     Here, Appellant did not make any argument in the court below that her hearing was unfair or that she was denied adequate due process. In general, this court will not consider arguments raised for the first time on appeal absent exceptional circumstances. *In re MH2008-002659*, 224 Ariz. 25, 27, ¶ 9 (App. 2010) (citing *Trantor v. Fredrikson*, 179 Ariz. 299, 300 (1994)). This is because "a trial court and opposing counsel should be afforded the opportunity to correct any asserted defects before error may be raised on appeal." *Trantor*, 179 Ariz. at 300.

**¶12**     This case does not present such exceptional circumstances. Nothing indicates Appellant was prejudiced by the court denying the continuance and allowing Appellant to be represented by appointed counsel. Further, Appellant does not argue that her counsel was ineffective in any way or did not fulfil the statutory duties under A.R.S. § 36-537(B).

**¶13**     Moreover, even if Appellant's arguments in this regard were not waived, such arguments would still fail. "Due process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *In re MH2006-000023*, 214 Ariz. 246, 248-49, ¶ 10 (App. 2007) (quoting *Huck v. Haralambie*, 122 Ariz. 63, 65 (1979)). Due process also requires that the patient be present at the hearing, "be confronted with witnesses against [her], have the right to cross examine, and to offer evidence." *Jesse M.*, 217 Ariz. at 76, ¶ 9 (quoting *Specht v. Patterson*, 386 U.S. 605, 610 (1967)). Appellant has not alleged that any of these procedural safeguards were not met.

**¶14**     Appellant argues that the denial of the continuance should be analyzed under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), to determine

whether she was afforded adequate procedural due process. However, this argument also fails. Although involuntary commitment proceedings pose a significant risk of deprivation of liberty, Appellant fails to argue how the procedures used below were inadequate to protect her from any erroneous deprivation of her rights, nor does she explain what additional procedural safeguards were necessary to protect her rights. *See id.* Although Appellant was not granted the continuance to obtain alternative counsel, that fact alone is insufficient to support a claim that the procedures used erroneously deprived Appellant of her due process rights. *See MH2003-000240*, 206 Ariz. at 369, ¶¶ 7, 9 (explaining use of the word "may" in A.R.S. § 36-535(B) is permissive, meaning the court has discretion to grant a continuance but is not obligated to do so). [2]

¶15        The court did not abuse its discretion in denying the continuance. Pursuant to A.R.S. § 36-535(B), the court may continue a hearing on a petition for court-ordered treatment upon good cause shown. Here, Appellant provided no explanation for why she waited until the time of the hearing to make her request to change counsel nor any explanation for why she had been unable to retain private counsel prior to the hearing. *See MH2003-000240*, 206 Ariz. at 369-70, ¶ 10 (holding the court did not abuse its discretion in refusing to grant a continuance to allow the appellant to secure private counsel when the appellant did not raise the issue prior to the hearing). Although not explicit in the record, when we view the facts in the light most favorable to upholding the court's ruling—as we must—the court easily could have found Appellant's statement that her "mom was working on" securing a private attorney insufficient to satisfy the "good cause" standard to justify the delay of these time-sensitive proceedings. *See* A.R.S. § 36-535(B); *see also In re MH2009-002120*, 225 Ariz. 284, 290, ¶ 17 (App. 2010). Appellant provided no information on whether any attorneys had been contacted to represent her nor showed any due diligence demonstrating a likelihood that she could secure an attorney in a timely

---

[2]        Appellant also argues the court abused its discretion and violated her due process rights based on the analysis required by *State v. Aragon*, 221 Ariz. 88, 90, ¶ 5 (App. 2009); however, *Aragon* is a criminal case and is not applicable here. *See In re MH2008-000867*, 225 Ariz. 178, 180-81, ¶ 8 (2010) ("Although civil commitment proceedings pose a potential loss of liberty, they differ from criminal proceedings in many important ways. As the Supreme Court has noted, a civil commitment proceeding should not be constitutionally 'equated to a criminal prosecution' because the state is not acting in a punitive manner." (quoting *Addington v. Texas*, 441 U.S. 418, 428 (1979))).

fashion.[3] Moreover, the court later found "no credible information rebutting the presumption of indigency as set forth in A.R.S. § 36-537(B)," meaning there was very little likelihood Appellant could afford to retain private counsel. Because there was no reason provided for Appellant's delay in requesting the continuance until the day of the hearing, no record of any concrete steps Appellant had taken to find or hire a private attorney, and no evidence that Appellant could afford to hire a private attorney even if she did find one, the court did not abuse its discretion in denying Appellant's request for a continuance to obtain private counsel.

¶16 In addition, we find no error in the court's denial of Appellant's oral motion to represent herself. The record shows the court conducted an appropriate, on-the-record discussion in accordance with *Jesse M.* in evaluating and ultimately denying Appellant's request to represent herself. *See Jesse M.*, 217 Ariz. at 80, ¶ 30. The court advised Appellant of her right to counsel and that, if waived, Appellant would be responsible for presenting her case, calling and cross-examining witnesses, and making a closing argument. The court specifically inquired about Appellant's understanding of the proceedings and discussed with Appellant the specifics of and motivation for her request. The court gave both counsel for the State and Appellant's appointed counsel the opportunity to offer additional information or input concerning Appellant's requests. The court also reviewed Appellant's file before ruling. Finally, the court made specific findings in its minute entry as to why it denied Appellant's oral motion to represent herself. The court noted that numerous questions posed to Appellant by the court were "not responsive or only partially responsive." Further, the court specifically found that "based on the totality of the record [Appellant] is unable to knowingly and intelligently understand the request to waive Counsel, what she would be required to do, and the attendant consequences thereto." Accordingly, the court did not err in denying Appellant's request to represent herself.

---

[3] Appellant's appointed counsel and counsel for the state both noted the statutory timeline required for the proceedings, and we assume the court considered that timeline in reaching its decision. *See* A.R.S. § 36-535(B).

**CONCLUSION**

**¶17** For the foregoing reasons, we affirm the superior court's order for Appellant's involuntary mental health treatment.



AMY M. WOOD • Clerk of the Court
FILED: AA