IN THE MATTER OF: EUGENE UNDERWOOD

No. 7712DC1022

(Filed 17 October 1978)

1. **Insane Persons § 1.2— involuntary commitment petition—hearing held on eleventh day of custody**

    The trial court properly refused to dismiss an involuntary commitment petition because a hearing was not held within ten days of the day respondent was taken into custody as required by G.S. 122-58.7(a), since the tenth day after respondent was taken into custody was a Sunday; the hearing was held on the following day; G.S. 1A-1, Rule 6(a) provides that when the last day of a period of time prescribed by an applicable statute is a Saturday, Sunday or legal holiday, the period runs to the end of the next day which is not a Saturday, Sunday or legal holiday; and thus the hearing called for by G.S. 122-58.7(a) was held in apt time.

2. **Insane Persons § 1.2— involuntary commitment proceeding—no medical evidence required**

    The involuntary commitment statutes do not provide that an order of commitment may issue only when the requisite factual findings are supported by competent medical evidence; rather, all that is required is that the court make the essential findings from "clear, cogent, and convincing evidence," which the court did in this proceeding. G.S. 122-58.7(i).

APPEAL by respondent from *Guy, Judge*. Judgment entered 16 August 1978. Heard in the Court of Appeals 20 September 1978.

This is a proceeding pursuant to G.S. Chap. 122, Art. 5A, for the involuntary commitment of the respondent, Eugene Underwood, to a mental health facility.

On 4 August 1977 Rev. Rudolph Brock, Director of the City Rescue Mission in Fayetteville, appeared before a magistrate and executed an affidavit and petition as required by G.S. 122-58.3(a) in which he alleged that the respondent was a mentally ill or inebriate person who was imminently dangerous to himself or others. The facts on which this opinion was based were stated in the affidavit to be as follows:

> The respondent has been a mental patient since approximately 8 years of age and at present time is at the City Rescue Mission. The respondent has broken out windows at the mis-

sion, and slashed his head and wrist, refuses medical treatments, threatened to kill everyone at the mission.

The magistrate found reasonable grounds to believe that the facts alleged in the affidavit were true and ordered that the respondent be taken into custody for examination by a qualified physician. Pursuant to this order, respondent was taken into custody on 4 August 1977 and on the same day was examined by a qualified physician, who found respondent to be mentally ill or an inebriate and imminently dangerous to himself or others. Respondent was then taken to the Dorothea Dix Hospital in Raleigh for temporary custody, examination, and treatment pending a hearing in the district court.

The matter was heard in the district court on 15 August 1977, respondent being present and being represented by his court appointed counsel.

At the hearing, the petitioner testified as follows:

I am Reverend Rudolph Brock, Driector of the City Rescue Mission since its opening, November, 1973. I have known the respondent and he has been a resident of the mission since January, 1974. I took out the Petition against the respondent. He had been a good patient for two and a half or three years. He went to the doctor with me every two weeks to get his shots. Then something happened to him; he began to go to Walker's Kitchen and Pool Room on Hay Street. I couldn't restrain him and he refused to stay away from up there. About July 20, 1977, he crashed through the window of the front doors. He would not let me take him to the doctor and he refused to take his medicine. He said the medicine made him sick and that he was going to support his wife and children, but Eugene is not married and has no children. We had to call the police to restrain him. They took him to the doctor and got him sewed up and he returned and agreed to take his medicine for a day or two after that. His medicine is Mellaril in 200 mg. doses. He would curse everyone in the mission and threaten to kill everyone. He accused me of starving the black patients and feeding the whites, and this is what led me to take out the papers to have him sent to Raleigh for medication. The respondent almost choked my cook to death the same night he broke through the front

doors. He pushed my wife up against the wall one time. He was never calm, but when he took his medicine he was more calm.

The court sustained the respondent's objection to the introduction of a medical report from a doctor at Dorothea Dix Hospital and no other medical evidence was presented by the petitioner. The respondent offered no evidence.

At the conclusion of the hearing, Judge Guy made oral findings of fact and entered an oral order of commitment for 90 days. On 16 August 1978 Judge Guy entered a written order of commitment for 90 days with written findings of fact including:

4. That the respondent has lived several years at the City Rescue Mission with good behavior; that his behavior changed; that he became violent; made threats to the director of the mission and others; that he crashed through a glass door of the mission and injured himself a short time ago; that he assaulted the cook by choking him; that he failed and refused to take medication prescribed to control his behavior; that he said he had to leave to support his wife and children when he has no wife and children;

5. That respondent was examined by a qualified physician on August 4, 1977 at Cape Fear Valley Hospital, Fayetteville, N.C., whose professional opinion is that respondent is mentally ill or inebriate of imminent danger to self or others, and recommends commitment;

6. That respondent is mentally ill or inebriate and is imminently dangerous to self or others and ought to be committed for treatment.

From the order of commitment, the respondent appealed.

*Attorney General Edmisten by Christopher S. Crosby, Associate Attorney for the petitioner, appellee.*

*Tye Hunter, Assistant Public Defender for the respondent, appellant.*

PARKER, Judge.

[1] Respondent's attorney moved in the District Court to dismiss the petition because the hearing was not held within ten days of

In re Underwood

the day respondent was taken into custody as required by G.S. 122-58.7(a). The denial of this motion is the subject of respondent's first assignment of error. We find no merit in this assignment of error.

An involuntary commitment proceeding under Art. 5A of G.S., Chap. 122, is a proceeding of a civil nature which is governed by pertinent Rules of Civil Procedure. G.S. 1A-1, Rule 1. Rule 6(a) of the Rules provides that when the last day of a period of time prescribed by an applicable statute is a Saturday, Sunday, or a legal holiday, the period runs to the end of the next day which is not a Saturday, Sunday, or a legal holiday. Respondent in the present case was taken into custody on 4 August 1977. The tenth day thereafter fell on Sunday, 14 August 1977. The hearing was held in the District Court on the following day, Monday, 15 August 1977. Thus, in this case the hearing called for by G.S. 122-58.7(a) was held in apt time. We do not suggest that dismissal of the proceeding would have been required had the hearing been delayed for a few days beyond the ten day period specified in G.S. 122-58.7(a). On the present record that question is not presented, and we express no opinion concerning it. Respondent's first assignment of error is overruled.

[2] Respondent next contends that his motion to dismiss made at the conclusion of petitioner's evidence should have been allowed because there was no clear, cogent, and convincing evidence upon which the court could base its findings that respondent was mentally ill or inebriate and imminently dangerous to self or others. In support of this contention respondent points out that no testimony was presented from any qualified physician and no reports or findings of a qualified physician or records from a mental health facility were admitted into evidence. From our reading of the involuntary commitment statutes, however, we do not infer that an order of commitment may issue only when the requisite factual findings are supported by competent medical evidence. *In re Benton*, 26 N.C. App. 294, 215 S.E. 2d 792 (1975). All that is required is that the court make the essential findings from "clear, cogent, and convincing evidence." G.S. 122-58.7(i). It is for the trier of fact to determine whether evidence offered in a particular case is clear, cogent, and convincing. *In re Hatley*, 291 N.C. 693, 231 S.E. 2d 633 (1977); 2 Stansbury's N.C. Evidence (Brandis Rev. 1973), § 213, p. 162. Our function on appeal is simply to determine

whether there was any competent evidence to support the factual findings made. In the present case the trial court, as finder of the facts, expressly stated in the order appealed from that its factual findings were made "by clear, cogent and convincing evidence." We find that, although there was no evidence to support a finding that respondent was an inebriate, the petitioner's testimony furnished competent evidence to support the trial court's factual findings set forth in its Finding No. 4. These factual findings in turn furnished ample support for the court's ultimate findings that respondent was mentally ill and imminently dangerous to self or others upon which the commitment order was based. There was no error in the denial of respondent's motion to dismiss.

Respondent next contends that the commitment order must be reversed because the oral findings announced by the court on the day of the hearing were incomplete. This contention has no merit. The court's order was ultimately embodied in the written commitment order signed by the judge on 16 August 1977, and it is that order which is the subject of this appeal. The trial court had power during the term to modify or add to its decree. *Chriscoe v. Chriscoe*, 268 N.C. 554, 151 S.E. 2d 33 (1966).

Finally, respondent assigns error to the court's Finding No. 5 which concerns the examination of the respondent by a qualified physician on 4 August 1977, the day he was taken into custody. Respondent correctly points out that no evidence of this examination was introduced at the hearing. Even so, the court's commitment order can be sustained. As above noted, the court's ultimate findings on which that order was based, that respondent was mentally ill and imminently dangerous to self or others, were amply supported by the court's detailed factual findings contained in Finding No. 4. Therefore, respondent can show no prejudice by the inclusion of Finding No. 5 in the order.

The order appealed from is

Affirmed.

Judges HEDRICK and MARTIN (Robert M.) concur.