IN THE MATTER OF: KELLY A. PERKINS

No. 8212DC740

(Filed 1 February 1983)

1. **Insane Persons § 1.2— finding of imminent danger to self or others supported by evidence**

     The evidence amply supported the trial court's findings that respondent was mentally ill and that he was dangerous to himself or others, G.S. 122-36 and G.S. 122-58.7(i), where there was evidence that respondent had fired a gun at the temporary fiduciary of respondent's funds and where a psychiatrist testified that respondent was dangerous to himself or others.

2. **Constitutional Law § 40— no per se constitutional right to opposing counsel**

     There is no *per se* constitutional right to opposing counsel, and absence of counsel for petitioner did not violate certain constitutional rights of respondent in an involuntary commitment proceeding.

APPEAL by respondent from *Cherry, Judge*. Order entered 22 April 1982 in District Court, CUMBERLAND County. Heard in the Court of Appeals 18 January 1983.

Respondent appeals from an order finding that he is mentally ill and imminently dangerous to himself or others, and committing him involuntarily to the VA Hospital in Fayetteville.

*Attorney General Edmisten, by Associate Attorney Walt M. Smith, for the State.*

*Staples Hughes, Assistant Public Defender, for respondent appellant.*

WHICHARD, Judge.

[1] Respondent contends that because the evidence was insufficient to support the finding that he "is imminently dangerous to himself or others," the court erred in denying his motions to dismiss. We disagree.

The involuntary commitment statute, G.S. 122-58.1 to .27 (1981 & Supp. 1981), required as a condition to a valid commitment order that the court find, by clear, cogent, and convincing evidence, two distinct facts: first, that respondent was mentally ill or inebriate, as those words are defined in G.S. 122-36; and second, that respondent was dangerous to himself or others. G.S.

122-58.7(i); *In re Holt*, 54 N.C. App. 352, 353, 283 S.E. 2d 413, 414 (1981); *In re Carter*, 25 N.C. App. 442, 444, 213 S.E. 2d 409, 410 (1975).

The court found that respondent was mentally ill. A psychiatrist at the VA Hospital in Fayetteville testified that he had first seen respondent eight days earlier, and had last seen him the day before the hearing. He further testified: "[Respondent] is suffering from chronic schizophrenia and has recently had an acute flareup. In my opinion, he is mentally ill."

The trier of fact could and did find that the foregoing constituted clear, cogent, and convincing evidence to support a finding that respondent was mentally ill. The finding is thus conclusive on appeal, and the first of the two statutory requirements is satisfied. *See In re Underwood*, 38 N.C. App. 344, 347-48, 247 S.E. 2d 778, 780-81 (1978).

To satisfy the second requirement there must be (1) findings to support a conclusion that respondent was dangerous to himself or others, and (2) competent evidence to support such findings. *Id.; Holt, supra.*

The court found that respondent was dangerous to himself or others. The temporary fiduciary of respondent's funds testified that he had released to respondent funds he felt to be sufficient; that he had denied respondent's request for further funds; and that respondent thereupon had taken from his pocket what appeared to be a handgun, had placed it on the table, and had said, "Well, I guess I'll have to shoot you then." He further testified that respondent then removed the gun from the table, pointed it at him, and fired twice.

The psychiatrist who had examined respondent testified: "In my opinion, [respondent] is dangerous to himself or others." He further testified:

> [H]is thinking is . . . so disorganized that he can't think in a logical coherent fashion, and hence I don't feel that he could make sound rational judgments about his behavior with respect to himself and . . . other people at this time.
>
> . . . .

I think the potential [to harm other people] is there
. . . . I cannot say absolutely that [he] will, but I think the
potential is there . . . .

. . . .

[I]n my experience any person who acts out in a poten-
tially violent or aggressive way towards other people has the
capacity to turn that violence upon himself . . . .

The trier of fact could and did find that the foregoing constituted
clear, cogent, and convincing evidence to support a finding that
respondent was dangerous to himself or others. The second of the
statutory requirements is thus satisfied, *Underwood, supra*, and
denial of the motions to dismiss was not error.

[2] Respondent also presents ingenious but untenable arguments
to the effect that absence of counsel for *petitioner* violated cer-
tain constitutional rights of *respondent*. The gravamen of his con-
tention is (1) that he was denied a fair hearing because, due to
absence of counsel for petitioner, the court acted as petitioner's
*de facto* counsel; and (2) that he was denied equal protection of
the law because petitioners in hearings at state regional
psychiatric facilities are represented by counsel, G.S. 122-58.7(b),
-58.24, while petitioners in hearings held elsewhere are not. *See
In re Jackson,* 60 N.C. App. 581, 299 S.E. 2d 677 (1983) in which
identical contentions were presented.

We are aware of no *per se* constitutional right to opposing
counsel. Nothing in the record indicates language or conduct by
the court which conceivably could be construed as advocacy in
relation to petitioner or as adversative in relation to respondent.
Respondent thus fails to show that he has been adversely affected
by the involuntary commitment statutes as applied, and he
therefore has no standing to challenge their constitutionality. *See
State v. Mems,* 281 N.C. 658, 669, 190 S.E. 2d 164, 172 (1972); 16
C.J.S., Constitutional Law § 76a (1956). *See also French v.
Blackburn,* 428 F. Supp. 1351, 1354 (M.D.N.C. 1977), *aff'd,* 443 U.S.
901, 61 L.Ed. 2d 869, 99 S.Ct. 3091 (1979) ("[T]he North Carolina
General Assembly has enacted an excellent legislative scheme
which adequately protects the interests of all who may be in-
volved in an involuntary commitment proceeding."). *See generally*

Miller and Fiddleman, *Involuntary Civil Commitment in North Carolina: The Result of the 1979 Statutory Changes*, 60 N.C. L. Rev. 985, 996 (1982); Hiday, *The Attorney's Role in Involuntary Civil Commitment*, 60 N.C. L. Rev. 1027, 1029 (1982).

Affirmed.

Judges ARNOLD and HILL concur.