An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-315

Filed: 20 October 2015

Buncombe County, No. 14 SPC 1210

IN THE MATTER OF: D.M.B.

Appeal by respondent from order entered 22 August 2014 by Judge Ward D. Scott in Buncombe County District Court. Heard in the Court of Appeals 8 September 2015.

> *Attorney General Roy Cooper, by Assistant Attorney General Sandra Josephine N. Tetteh, for the State.*

> *Appellate Defender Staples Hughes, by Assistant Appellate Defender David W. Andrews, for respondent-appellant.*

TYSON, Judge.

D.M.B. ("Respondent") appeals from order entered committing him to a mental health facility for thirty days. We affirm.

## I. Factual Background

On 25 July 2014, Buncombe County Sheriff's Lieutenant Kevin Calhoun ("Lieutenant Calhoun") filed an affidavit and petition requesting the involuntary commitment of D.M.B.

Lieutenant Calhoun's affidavit averred Shane Vandernick ("Mr. Vandernick"), Respondent's neighbor, contacted him on 9 July 2014 and expressed concern about Respondent's behavior. According to Mr. Vandernick, Respondent "was constantly screaming, night and day, so that all in the community could hear him, often using very profane language."

Respondent's residence was a metal barn without running water or electricity. Respondent often stood in his own yard and stared at Mr. Vandernick and his wife. Respondent wandered around outside either naked or nearly naked. Respondent stood in his yard wearing only a towel. He removed the towel, draped it on the end of his erect penis, and stared intimidatingly at Mrs. Vandernick.

Mr. Vandernick reported Respondent brought large buckets and bags of feces and urine from inside his building, and poured the waste at various locations around his property line. Deputies also responded to an incident in which Respondent was firing a gun in the neighborhood.

Respondent contacted law enforcement, because he was irritated by dogs barking in the community. He told law enforcement "he [was] convinced that very often it [was] not the dogs at all, but rather their children who are barking excessively and/or irritating the animals in an attempt to provoke him."

Other neighbors reported Respondent had recently used an axe to cut down a number of trees located on another neighbor's property. When the neighbors inquired

of him about this activity, Respondent replied he was "building a fence with razor wire on the top to keep out Zombies." Mr. Vandernick stated all of the residents in the neighborhood were "terrified" of D.M.B.'s actions, and believed "something terrible was going to soon happen."

On 13 July 2014, Deputy Dean Hannah ("Deputy Hannah") of the Buncombe County Sheriff's Office responded to reports of an individual flagging down cars, growling at passengers, and screaming. Deputy Hannah had several previous encounters with Respondent, and immediately recognized the individual in the fog lane of the road, "walking into oncoming traffic" with a large backpack, as Respondent.

Deputy Hannah confronted Respondent and tried to speak with him. Respondent screamed profanities at Deputy Hannah, told him he had no authority over Respondent, and threatened to "rape and murder" Deputy Hannah if he remained present. After another brief confrontation, Deputy Hannah took Respondent into custody and placed him under arrest.

Deputy Hannah found a large, machete-like knife with a curved blade, located inside Respondent's backpack. Respondent remained belligerent as he was transported to the Buncombe County Detention Center. Deputy Hannah testified Respondent cursed, threatened to kill him and his family, and called him a "hiccup."

Respondent was charged with resisting a public officer, carrying a concealed weapon, and disorderly conduct.

The magistrate set a secured bond and Respondent was released shortly thereafter. A few days later, Respondent became angry when he saw two young girls playing basketball behind his property. He screamed at the girls to be quiet or he would "come over there and cut [their] f—king heads off!"

On 23 July 2014, the Buncombe County Community Safety and Security Team ("the Team") held a meeting regarding Respondent's actions. The Team was composed of Buncombe County Administration, Health and Human Services personnel, Adult Protective Services, Fire/Emergency Management, Risk Management personnel, and other agencies. The Team determined Respondent presented a danger to himself and others, and intervention was necessary.

Lieutenant Calhoun's petition and affidavit alleged Respondent was a "clear danger to himself or others." The magistrate entered a custody order for Respondent's commitment on 25 July 2014.

Respondent was initially examined at Mission Hospital Emergency Department on 26 July 2014. The emergency department physician reported Respondent was "paranoid" and posed "a danger to others and the community." Respondent's diagnosis was Psychosis NOS (not otherwise specified) and the physician recommended involuntary commitment.

Respondent was admitted to Copestone, Mission Hospital's psychiatric unit, on 29 July 2014. Another physician examined Respondent to evaluate his need for involuntary commitment. The examining physician determined Respondent was "mentally ill;" "dangerous to self;" and "dangerous to others." The examining physician recommended a thirty-day involuntary commitment.

At Respondent's involuntary commitment hearing, Lieutenant Calhoun and Deputy Hannah both testified about their encounters with Respondent, and the complaints they received from residents in the community.

Dr. Suzanne Collier ("Dr. Collier"), a psychiatrist and Respondent's primary attending physician at Copestone, also testified at the hearing. Dr. Collier was tendered without objection, and admitted as an expert in the field of general psychiatry. Dr. Collier had interacted with Respondent almost daily since 13 August 2014.

Dr. Collier testified Respondent was schizophrenic. She stated Respondent was delusional, and experienced auditory and visual hallucinations. Dr. Collier reported Respondent was

> talking to and seeing things that weren't really there. He was extremely agitated, saying that he was seeing bats and witches flying through the air and was looking up at the ceiling with his arms raised like he was actually responding to those things that weren't really there. This was all witnessed and documented by staff. I have talked with him about it, and he vehemently denies that that ever

> happened, that staff is lying about that. He was extremely
> threatening towards staff during that occasion.

Dr. Collier also stated Respondent "came within three inches of a nurse's nose with a plastic spoon handle, making stabbing motions toward him," "can't tolerate interactions with other people without becoming agitated," and "[says] that he's God and . . . witches are after the staff members[.]"

Dr. Collier testified Respondent was mentally ill, to a reasonable degree of medical certainty. She stated Respondent did not appear to be a danger to himself, but she believed he was a danger to others. Dr. Collier recommended Respondent receive ongoing inpatient treatment for a minimum of thirty days. She also testified Respondent was in need of long-term psychiatric treatment. Respondent remained on a waiting list for admission to Broughton Hospital, in Morganton, North Carolina, at the time of the hearing, "for a longer-term psychiatric stabilization."

During Dr. Collier's testimony, copies of Respondent's medical records, including his history while at Copestone, were marked as Petitioner's Exhibit 1 and admitted into evidence. Respondent's chart from Mission Hospital was also marked as Petitioner's Exhibit 2 and admitted into evidence. The chart contained "a combination of input and information from all the different sources that ha[d] interaction with" Respondent.

The trial court entered a written order on 22 August 2014, in which it made the following findings of fact:

Based on the evidence presented, the Court by clear, cogent and convincing evidence finds as fact all matters set out in the psychiatrist reports, included within Petitioner's Exhibits 1 and 2, and the reports are incorporated by reference as findings. The last examiner of Respondent was Copestone psychiatrist Suzanne B. Collier, MD. Her last exam and report thereof was August 20, 2014.

By clear, cogent and convincing evidence finds these other facts:

1. The Respondent is mentally ill.

2. Within the relevant past, the Respondent has attempted to inflict or threatened to inflict serious bodily harm on another or has acted in such a way as to create a substantial risk of serious bodily harm to another and that there is a reasonable probability that this conduct will be repeated.

3. Respondent has shown previous episodes of dangerousness to others, including his interactions with Officer Hannah and the staff of Copestone. On July 13, 2014, Respondent [D.M.B.] threatened Officer Hannah by saying he would kill, rape and murder Officer Hannah. Respondent [D.M.B.] called Officer Hannah a "hiccup."

. . . .

5. Based on observations made within the course of Respondent's treatment and care, this Court considers the threats to Officer Hannah to be more severe because he was a uniformed law enforcement officer and Respondent [D.M.B.] might not be as restrained in the future.

6. Respondent's psychiatrist testified that, in her opinion to a reasonable degree of medical certainty, based on her interactions with Respondent, her review of his medical chart, and her treatment of him through and including

August 20, 2014, Respondent is mentally ill and a danger to [others].

7. Although Respondent appears to be benefitting from treatment, based on the opinion of his psychiatrist, his prior actions in the relevant past, and current demeanor, it appears Respondent does not recognize his illness and the necessity of treatment and that Respondent would likely discontinue treatment if not ordered by a court to continue it.

The trial court concluded Respondent was mentally ill and was dangerous to others based on these findings, and committed him to Copestone for thirty days.

Respondent gave timely notice of appeal to this Court.

## II. Issue

Respondent argues the trial court erred by committing him to a mental health facility without making sufficient findings of fact to establish he was mentally ill.

## III. Standard of Review

This Court reviews a commitment order "to determine whether there was *any* competent evidence to support the facts recorded in the commitment order and whether the trial court's ultimate findings of mental illness and dangerous to self or others were supported by the facts recorded in the order." *In re Collins*, 49 N.C. App. 243, 246, 271 S.E.2d 72, 74 (1980) (citations omitted) (emphasis in original). "All that is required is that the [trial] court make the essential findings from clear, cogent, and convincing evidence." *In re Underwood*, 38 N.C. App. 344, 347, 247 S.E.2d 778, 780-81 (1978) (citation and internal quotation marks omitted).

IV. Analysis

A. Mootness

Although the term for Respondent's involuntary commitment has expired, "a prior discharge will not render questions challenging the involuntary commitment process moot." *In re Booker*, 193 N.C. App. 433, 436, 667 S.E.2d 302, 304 (2008) (citation and internal quotation marks omitted). "When the challenged order may form the basis for future commitment or may cause other collateral legal consequences for the respondent, an appeal of that order is not moot." *In re Webber*, 201 N.C. App. 212, 217, 689 S.E.2d 468, 472-73 (2009).

B. Determination of "Mentally Ill"

Respondent argues the trial court's findings of fact do not support its conclusions of law that he was mentally ill and a danger to others. Respondent also contends the trial court failed to fulfill its fact-finding duty by incorporating Dr. Collier's reports, and other reports and records contained in Petitioner's Exhibits 1 and 2. We disagree.

N.C. Gen. Stat. § 122C-268(j) provides: "To support an inpatient commitment order, the court shall find by clear, cogent, and convincing evidence that the respondent is mentally ill and dangerous to self . . . or dangerous to others[.]" N.C. Gen. Stat. § 122C-268(j) (2013). The statute also requires the trial court to record the facts which support its findings. *Id.*; *see also In re Koyi*, 34 N.C. App. 320, 321, 238

S.E.2d 153, 154 (1977) ("The direction to the court to record the facts which support its findings is mandatory."). An involuntary commitment order which does not contain sufficient facts to support its conclusion that a respondent is a danger to himself or others is subject to reversal. *Id.*

"Mental illness," when applied to an adult, is statutorily defined as "an illness which so lessens the capacity of the individual to use self-control, judgment, and discretion in the conduct of his affairs and social relations as to make it necessary or advisable for him to be under treatment, care, supervision, guidance, or control[.]" N.C. Gen. Stat. § 122C-3(21) (2013).

This Court held the trial court is not required to list a medical diagnosis when making a determination on mental illness. *Underwood*, 38 N.C. App. at 347, 247 S.E.2d at 780. The trial court may also consider testimony of physicians and psychiatrists in making a determination on mental illness. *In re Woodie*, 116 N.C. App. 425, 430, 448 S.E.2d 142, 144 (1994) (holding competent evidence supported trial court's determination that respondent was mentally ill where treating physician testified about respondent's mental health); *In re Perkins*, 60 N.C. App. 592, 593, 299 S.E.2d 675, 676 (1983) (holding psychiatrist's testimony that respondent suffered from chronic schizophrenia and was mentally ill constituted "clear, cogent, and convincing evidence to support a finding that respondent was mentally ill").

Dr. Collier testified at Respondent's involuntary commitment hearing that Respondent was diagnosed as schizophrenic and was being treated with antipsychotic medication. Dr. Collier stated Respondent's symptoms included delusions, combined with "auditory and visual hallucinations." Dr. Collier's opinion, to a reasonable degree of medical certainty, was Respondent posed a danger to others. Dr. Collier recommended he receive ongoing inpatient treatment.

The trial court determined Respondent was mentally ill in its involuntary commitment order. The trial court recorded the following findings in support of its determination: (1) Respondent has "attempted to inflict or threatened to inflict serious bodily harm on another[;]" (2) there was a substantial likelihood this conduct would be repeated; (3) "Respondent has shown previous episodes of dangerousness to others," including the aforementioned encounters with Officer Hannah and the Copestone staff; (4) Dr. Collier opined to a reasonable degree of medical certainty that Respondent was mentally ill and a danger to others; and (5) Respondent "does not recognize his illness and the necessity of treatment[.]"

## C. Incorporation of Medical Records

The trial court's order based its findings on "the evidence presented" and "the psychiatrist reports, included within Petitioner's Exhibits 1 and 2[.]" This Court has held a trial court may incorporate a physician's report into its findings of fact. *See In re Webber*, 201 N.C. App. at 225-26, 689 S.E.2d at 477-78; *In re Booker*, 193 N.C. App.

at 437, 667 S.E.2d at 304; *In re Zollicoffer*, 165 N.C. App. 462, 468-69, 598 S.E.2d 696, 700 (2004).

The psychiatrist's reports the trial court incorporated into its order included descriptions of Respondent's treatment and evaluation. Dr. Collier also referenced and explained these reports during her testimony. These incorporated reports, in addition to the findings of fact the trial court recorded in its order, are sufficient to support the trial court's determination that Respondent was mentally ill. Respondent's argument is overruled.

## V. Conclusion

The trial court's findings of fact were supported by clear, cogent, and convincing evidence. The trial court's findings of fact support its determination that Respondent was mentally ill. The trial court's order is affirmed.

AFFIRMED.

Judges BRYANT and GEER concur.

Report per Rule 30(e).