IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-157

No. COA21-7

Filed 15 March 2022

Union County, No. 19 CVS 2803

IDA EDWARDS, Petitioner,

v.

TORRE JESSUP, COMMISSIONER OF THE DIVISION OF MOTOR VEHICLES, STATE OF NORTH CAROLINA, Respondent.

Appeal by Respondent from order entered 22 September 2020 by Judge Jeffery K. Carpenter in Union County Superior Court. Heard in the Court of Appeals 5 October 2021.

*Paul A. Tharp for the Petitioner-Appellee.*

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Christopher W. Brooks, for the Respondent-Appellant.*

DILLON, Judge.

Appellee was charged with driving while impaired ("DWI"). This appeal does not concern this charge but rather concerns the revocation of her driver's license by the North Carolina Division of Motor Vehicles (the "DMV") based on her failure to consent to a chemical analysis after being charged with DWI. The superior court held that the DMV erred in revoking Appellee's license on appeal. We reverse the superior court.

## I. Background

On 7 February 2019, a law enforcement officer (the "Officer") responded to a call about a driver who had fallen asleep in the drive-through lane of a fast-food restaurant. Upon arrival, police at the scene directed the Officer to a vehicle parked in the restaurant's parking lot. Appellee was seated in the driver side of the vehicle. The vehicle was not running. The Officer asked Appellee to step out of the vehicle. The Officer noticed that Appellee seemed very lethargic, had a "deer in the headlights" look, and slurred her speech. When requested to present her driver's license, Appellee mistakenly gave the Officer her bank card and post office identification. Appellee then failed a field sobriety test and eventually admitted to taking unprescribed Hydrocodone.

The Officer charged Appellee with DWI, an implied consent offense. Appellee was transported to a detention center, where she refused to consent to a blood sample for a chemical analysis.

Appellee received notice that her driving privileges were being revoked for refusing chemical analysis pursuant to N.C. Gen. Stat. § 20-16.2 (2019). She requested an administrative hearing. At the conclusion of the hearing, the DMV hearing officer sustained the revocation. Appellee then filed a petition seeking review in the superior court. After a hearing on the matter, the superior court reversed the DMV's decision. The DMV timely appealed to our Court.

## II. Analysis

¶ 5    If an officer has "reasonable grounds to believe" that a driver has committed an implied-consent offense, such as DWI, the driver is required to submit to a chemical analysis.  N.C. Gen. Stat. § 20-16.2(a).  Any such driver who refuses to submit to a chemical analysis may have her license revoked, simply for refusing, even if she is not later convicted of the underlying crime.

¶ 6    Here, the superior court reversed the DMV decision on two different grounds.  We address each in turn.

### A. Reasonable Grounds That Appellee Was Operating Her Vehicle

¶ 7    The superior court concluded that there was a lack of evidence to support a finding that Appellee was operating her motor vehicle.  However, the evidence does not need to establish that Appellee was driving the vehicle.  The only requirement is that the Officer had "reasonable grounds to believe that" Appellee had driven the vehicle while under the influence.  N.C. Gen. Stat. § 20-16.2(a).  We held as such in unpublished opinions, which we find persuasive.  *Neilon v. Comm'r of Motor Vehicles*, 2011 N.C. App. LEXIS 1233, *13, 718 S.E.2d 737 (2011) (unpublished); *Thurman v. Comm'r, NC DMV*, 2008 N.C. App. LEXIS 1009 *5-6 (2008) (unpublished).  Our Court has equated "reasonable grounds" with "probable cause."  *Moore v. Hodges*, 116 N.C. App. 727, 730 449 S.E.2d 218, 220 (1994).

¶ 8      Here, we conclude that the evidence supports a finding that the Officer had a reasonable belief/probable cause that Appellee had been driving her vehicle while impaired.  First, the Officer had reasonable grounds that Appellee was impaired based on the evidence, including that recounted above.  And there was evidence that she had been driving.  Specifically, there was a report of a driver who had fallen asleep in the drive-through lane at a fast-food restaurant.  The Officer arrived to investigate and was directed to Appellee's car, which was in the restaurant parking lot.  Appellee was seated on the driver's side.  The vehicle belonged to her.  She stated that a friend had been "riding with her."  And she admitted to falling asleep while in her car in the drive-through lane.  It may be that the evidence was not sufficient *to convict* Appellee of DWI, but we conclude the evidence was sufficient to give the Officer probable cause that Appellee had driven her car while impaired.

## B. Due Process

¶ 9      The superior court concluded that Appellee was "denied the fundamental protections of the Due Process Clause . . . in that she was deprived of the opportunity to be heard at a meaningful time and in a meaningful manner."  However, Appellee never alleged a due process violation in her petition to the superior court.  Assuming *arguendo* that Appellee's due process argument is properly before us, we conclude that her due process rights were not violated, as explained below.

¶ 10    The superior court found that Appellee's due process rights were violated because the hearing officer is a DMV employee *and* because she essentially acted, not only as fact-finder, but also as the prosecutor.  Neither party cited, nor has our research uncovered a North Carolina case on point.  We note, though, that the Fourth Circuit affirmed the decision of the Western District of North Carolina concluding that the hearing procedure prescribed in N.C. Gen. Stat. 20-16.2 does not violate the driver's due process rights.  *Montgomery v. N.C. Dep't of Motor Vehicles*, 455 F. Supp. 338, 341 (W.D.N.C. 1978), *aff'd*, 599 F.2d 1048 (4th Cir. 1979).

¶ 11    We conclude that the fact that a hearing officer in a DMV hearing is a DMV employee does not violate a driver's due process rights *per se*.  For instance, the United States Supreme Court has held that a prisoner facing disciplinary procedures is not deprived of due process merely because the panel who hears the matter is comprised of prison officials.  *See Wolff v. McConnell*, 418 U.S. 539, 570 (1974). Justice Marshall dissented in *Wolff*, but did agree on the above point, stating:

> Finally, the [majority] addresses the question of the need for an impartial tribunal to hear these prison disciplinary cases. We have recognized that an impartial decisionmaker is a fundamental requirement of due process in a variety of relevant situations . . . and I would hold this requirement fully applicable here. But in my view there is no constitutional impediment to a disciplinary board composed of responsible prison officials like those on the Adjustment Committee here. While it might well be desirable to have persons from outside the prison system sitting on disciplinary panels, so as to eliminate any possibility that

> subtle institutional pressures may affect the outcome of disciplinary cases and to avoid any appearance of unfairness, in my view due process is satisfied as long as no member of the disciplinary board has been involved in the investigation or prosecution of the particular case, or has had any other form of personal involvement in the case.

*Id.* at 592 (Marshall dissenting).

¶ 12 In this case, there is nothing to indicate that the DMV hearing officer had any special knowledge or connection to Defendant's case that would indicate a lack of impartiality. We hold that there is nothing "in the record presented here for [us to] conclud[e] that the [DMV Hearing Officer acting in accordance with Section 20-16.2] presents such a hazard of arbitrary decision making that it should be held violative of due process of law." *See id.* at 571.

¶ 13 The superior court also took issue with the fact that there was no attorney at the hearing putting on the DMV's case. Rather, the hearing officer considers the evidence in the DMV file, issues subpoenas when necessary, and questions the driver and other witnesses. In sum, the superior court essentially held that the hearing is not "meaningful" because the hearing officer is biased in favor of the DMV. Based on our jurisprudence, though, we hold that this procedure does not violate a driver's due process rights where there is nothing to indicate that the hearing officer was doing anything more than attempting to elicit the truth.

¶ 14    We have made similar holdings in commitment proceedings where the State is not represented by counsel. *See, e.g., In re C.G.*, 278 N.C. App. 416, 2021-NCCOA-344, 863 S.E.2d 237 (2021); *In re Perkins*, 60 N.C. App. 592, 299 S.E.2d 675 (1983). Our Supreme Court has described this principle, stating that "the trial judge may interrogate a witness for the purpose of developing a relevant fact . . . in order to ensure justice and aid [the fact-finder] in their search for a verdict that speaks the truth." *State v. Pearce*, 296 N.C. 281, 285, 250 S.E.2d 640, 644 (1979). That Court has further held that it is not a *per se* constitutional violation for the trial court to exercise its right to call or question witnesses. *State v. Quick*, 329 N.C. 1, 21-25, 405 S.E.2d 179, 192-93 (1991). And our Court has held that it is not *per se* prejudicial for a judge to question a witness, even where the answer provides the sole proof of an element which needs to be proved. *See State v. Lowe.* 60 N.C. App. 549, 552, 299 S.E.2d 466, 468 (1983).

¶ 15    In sum, we conclude that the procedure prescribed by Section 20-16.2 does not violate a driver's right to due process. The fact that the hearing officer is a DMV employee and plays a role in drawing out the truth does not render that officer biased any more than a judge, who has the same employer as the prosecutor (the State of North Carolina), could be deemed biased for merely questioning witnesses. This is not to say that the manner in which a hearing officer conducts her hearing could never rise to a due process violation where the hearing officer displays clear bias.

However, there is no indication that any such bias was present in the way Appellee's hearing officer conducted the hearing.

## III. Conclusion

We conclude that the superior court erred by reversing the DMV's order revoking Appellee's driving privileges. The record supports the findings in the DMV order, and the findings support the conclusions of law. In addition, Appellee was not deprived of due process at the hearing before the DMV officer.

REVERSED.

Judges MURPHY and JACKSON concur.